CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

11/8/2024
LAURA A. AUSTIN, CLERK
BY:  s/ CARMEN AMOS
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

PANSY HANSON,

*Plaintiff,*

v.

DEPOT LBX, INC. and RIVERSTREET
DEVELOPMENT, L.L.C.

*Defendants.*

CASE NO. 6:24-cv-00026

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

Plaintiff's motion to remand raises a question of first impression for this district: *Does a home-state defendant violate 28 U.S.C. § 1441(b)(2)'s "Forum Defendant Rule" if the defendant removes a case from state to federal court <u>before</u> being served with the summons and complaint in the state court action?* The plain text of the federal removal statute leads the Court to answer, *no*. For the reasons discussed below, the Court concludes that a litigation tactic known as "snap removal" is permissible under the relevant statutory language. The Court accordingly denies Plaintiff's motion to remand. Dkt. 8.

## I. BACKGROUND

### A. The federal removal statute, the "Forum Defendant Rule," and "snap removal"

Federal courts are courts of limited jurisdiction, meaning they can only exercise power to hear cases and controversies when they are authorized to do so by the United States Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In general,

a case may be filed in federal court if there is diversity of citizenship under 28 U.S.C. § 1332 or

if there is federal question jurisdiction under 28 U.S.C. § 1331.

The federal removal statute allows a defendant to a civil action brought in state court to

remove a case to federal district court if the federal court would have original jurisdiction over

the case (in other words, if the plaintiff could have originally filed the lawsuit in federal court).

28 U.S.C. § 1441(a).

The statute has a special provision that applies when a case is removable based on

"diversity" jurisdiction under 28 U.S.C. § 1332, which arises when the plaintiff and defendant

are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §

1332(a). When removal would be based on diversity jurisdiction, 28 U.S.C. § 1441(b)(2)

provides that such an action "may not be removed if any of the parties in interest <u>properly joined</u>

<u>and served</u> as defendants is a citizen of the State in which such action is brought." (emphasis

added).[1] This means that a defendant who is a citizen of the state in which the state court action

was filed (sometimes called the "forum defendant" or "home state defendant") often cannot

invoke diversity jurisdiction to justify removal to federal court. This requirement is widely

known as the "Forum Defendant Rule." *See Lawhorne v. Walgreens Boots Alliance, Inc.*, No.

3:19-cv-00016, 2019 WL 3046106, at *2 (W.D. Va. July 11, 2019) (providing a general

overview of the removal statute).

---

[1] The full text of the Forum Defendant Rule is as follows:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title
> may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of
> the State in which such action is brought.

28 U.S.C. § 1441(b)(2).

Since around the turn of the 21st century,[2] litigants in federal courts across the country

have raised arguments about whether the plain language of 28 U.S.C. § 1441(b)(2) – specifically,

its reference to "properly joined and served" defendants – should be construed to allow a forum

state defendant to remove a case to federal court if they do so *before* being formally served in the

state court action. The case law and academic commentary often labels this pre-service removal

maneuver as "snap removal." For a long time, the federal district courts have grappled with this

question of statutory interpretation with little appellate guidance.[3] The legal landscape has started

to shift in recent years with three federal appellate court decisions, all of which held snap

removal to be a permissible litigation tactic under the removal statute. *See Encompass Insurance*

*Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147 (3d Cir. 2018); *Gibbons v. Bristol-Myers*

*Squibb Co*., 919 F.3d 699 (2d Cir. 2019); *Texas Brine Co., LLC v. Am. Arb. Ass'n, Inc.*, 955 F.3d

482 (5th Cir. 2020).[4]

The "properly joined and served" language at issue has been part of the Forum Defendant

Rule for over 70 years. The consensus among jurists and scholars is that Congress added the

---

[2] *See* Valerie N. Nannery, *Closing the Snap Removal Loophole*, 86 U. CIN. L. REV. 541, 546-50 (2018) (tracing the history of snap removal and identifying its first reported use in *Recognition Communications, Inc. v. American Auto Ass'n, Inc*., No. 3:97-CV-0945-P, 1998 WL 119528 (N.D. Tex. Mar. 5, 1998))).

[3] There are several factors that explain the limited body of appellate case law on snap removal. Most significantly, an order remanding a case to state court is generally not reviewable on appeal under 28 U.S.C. § 1447(d). *See also Protopapas v. Travelers Casualty & Surety Co*., 94 F.4th 351, 356 (4th Cir. 2024) (explaining that § 1447(d) "bars appellate court review of remand orders when they are based on '(1) a district court's lack of subject matter jurisdiction or (2) a defect in removal other than lack of subject matter jurisdiction that was raised by the motion of a party within 30 days after the notice of removal was filed." (quoting *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008)) (cleaned up)). A denial of a motion to remand is also not a final judgment that can be immediately appealed as of right. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). Finally, there are practical reasons snap removals avoid appellate review, including settlement and cost considerations. For a thoughtful discussion of these dynamics, *see* Nannery, *supra* note 2 at 557 ("If a plaintiff is awarded judgment in district court, there is no reason to appeal the denial of remand. If judgment is granted to defendants, a plaintiff must assess whether to spend even more time and resources to ask a court of appeals to allow the case to start over in state court where the plaintiff will have to expend more time and resources in hopes of obtaining a better result there.")

[4] There is also a footnote in a Sixth Circuit decision that suggests approval of snap removal as consistent with the federal removal statute. *See McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) ("Where there is complete diversity of citizenship … the inclusion of an *unserved* resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b).") (italics in original).

language in 1948 as a means of curtailing a removal-prevention tactic by which a plaintiff's

complaint would name a "sham" in-state defendant whom the plaintiff never intended to serve or

otherwise litigate their claims. A district court judge summarized the history as follows:

> In its original form, the rule created potential for abuse by plaintiffs. A crafty plaintiff
> could name an in-state defendant to the suit, without ever intending to prosecute the case
> against that defendant, purely to frustrate removal. To combat this tactic, defendants
> could argue that joinder of the in-state defendant was fraudulent. But Congress decided
> this was not enough and amended the statute in 1948 to add another tool to defendants'
> arsenal. Specifically, Congress added the "properly joined and served" language to the
> rule, so that if a plaintiff named but never served an in-state defendant, the forum
> defendant rule would not preclude removal. In this way, the purpose of the "properly
> joined and served" addition was "to prevent a plaintiff from blocking removal by joining
> as a defendant a resident party against whom the plaintiff does not intend to proceed."

*Bowman v. PHH Mortgage Corp.*, 423 F.Supp.3d 1286, 1291-92 (N.D. Ala. 2019) (citations

omitted). *See also Encompass Insurance Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147,

153 (3d Cir. 2018) ("The specific purpose of the 'properly joined and served' language in the

forum defendant rule is less obvious. The legislative history provides no guidance; however,

courts and commentators have determined that Congress enacted the rule 'to prevent a plaintiff

from blocking removal by joining as a defendant a resident party against whom it does not intend

to proceed, and whom it does not even serve.'" (quoting Arthur Hellman, et al., *Neutralizing the

Strategem of "Snap Removal": A Proposed Amendment to the Judicial Code*, 9 FED. CTS. L.

REV. 103, 108 (2016))). When Congress last amended 28 U.S.C. § 1441(b) in 2011, it left the

"properly joined and served" language intact. *See* H.R. Rep. No. 112-10, at 12 (noting that the

changes merely restated "the substance" of the "current subsection 1441(b)."); *Bowman*, F.Supp.

3d at 1289 n. 3 ("Before 2011, the statute read in relevant part that a diversity case 'shall be

removable only if none of the parties in interest properly joined and served as defendants is a

citizen of' the forum state. 28 U.S.C. § 1441(b) (2006). Essentially, the amendment changed the

word 'none' to 'any.'").

The Fourth Circuit has not yet weighed in on the propriety of snap removal. Moreover, the instant motion to remand presents the issue to this Court for the first time.[5]

## B.  Procedural history

The basic details of how Defendant Depot LBX, Inc.[6] removed the case to this Court are not in dispute. Plaintiff Pansy Hanson filed a personal injury lawsuit against Defendant Depot LBX, Inc. on June 3, 2024 in the City of Lynchburg Circuit Court. Dkt. 1-1. The case arose from an alleged slip and fall on March 28, 2024 at Defendant's restaurant, Depot Grille, in Lynchburg. *Id*. Before filing the complaint in state court, Plaintiff's counsel informed Defendant's insurer that Plaintiff would file such a suit. Dkt. 8 at 2. After mailing the complaint to Lynchburg Circuit Court on May 31, 2024, Plaintiff's counsel emailed a "courtesy copy" of the state court complaint to the insurer on June 3, 2024. Dkt. 8 at 2, Dkt. 8-2 at 1. The complaint was filed in the circuit court the same day. Dkt. 1 at 1. Then, two days later – before Defendant was served – Defendant filed a notice of removal in this Court pursuant to 28 U.S.C. §§1332, 1441, and 1446. Dkt. 1 at 1. Thus, Defendant had attempted a snap removal.

Plaintiff subsequently filed a motion to remand the case to state court, arguing that the "Forum Defendant Rule" should prohibit Defendant's removal because Plaintiff is a Tennessee

---

[5] In ruling on a motion to remand in *Lawhorne v. Walgreens Boots Alliance, Inc*., No. 3:19-cv-00016, 2019 WL 3046106, at *3-4 (W.D. Va. July 11, 2019), this Court considered arguments that were related to snap removal. Because diversity jurisdiction is a prerequisite for applying the Forum Defendant Rule and such jurisdiction was missing in the case, the Court did not go any further with analyzing the rule. *Id*. at *3-4. Thus, it did not interpret the "properly joined and served" language in 28 U.S.C. § 1441(b)(2). *Id*.

[6] At the time of removal in this case, Depot LBX, Inc., a Virginia corporation, was the sole defendant. Dkt. 1. Plaintiff later amended her complaint to add a second defendant, Riverstreet Development, LLC, which is a Virginia limited liability company. Dkt. 10 at 1-2. Because "[c]ourts look to the record existing at the time the petition for removal was filed when addressing the propriety of removal[,]" *Hatcher v. Lowe's Home Centers, Inc*., 718 F.Supp.2d 684, 686 (E.D. Va. 2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–291 (1938)), the Court's analysis in this Memorandum Opinion only considers the sole defendant at the time of removal: Depot LBX, Inc.

citizen while Defendant is a Virginia citizen (a forum defendant). Dkt. 8 at 2. As discussed

throughout this opinion, the parties offer competing interpretations of the Forum Defendant Rule.

## II. LEGAL STANDARDS

A party may challenge removal based on either a lack of subject matter jurisdiction or a

procedural defect apart from jurisdiction. *See* 28 U.S.C. § 1447(c); *Ellenburg v. Spartan Motors

Chassis, Inc.*, 519 F. 3d 192, 196-97 (4th Cir. 2008).

The removal statute, 28 U.S.C. § 1441(a), allows a defendant to remove a case from state

to federal court if the plaintiff could have originally brought the action in federal court. The party

seeking removal bears the burden of establishing that the federal court has jurisdiction. *Strawn v.

AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems.

Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism

concerns," federal courts "strictly construe removal jurisdiction" such that "[i]f federal

jurisdiction is doubtful, a remand is necessary." *Mulcahey*, F.3d at 151. *See also Marshall v.

Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (referring to "Congress' clear intention to

restrict removal and to resolve all doubts about the propriety of removal in favor of retained state

court jurisdiction."). Put differently, when jurisdiction is in question, the defendant must

overcome a presumption *against* removal.

If a defendant seeking to remove a case establishes federal jurisdiction, then a court

should proceed to hear the case absent a procedural defect in the removal. This is consistent with

"the general rule that federal courts are bound by a 'virtually unflagging obligation ... to exercise

the jurisdiction given them.'" *Chase Brexton Health Services, Inc. v. Maryland*, 411 F.3d 457,

462 (4th Cir. 2005) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817

(1976). Thus, if two conditions are met – (1) a defendant successfully establishes federal subject matter jurisdiction and (2) plaintiff fails to establish a procedural defect in removal – then the Court should generally allow for removal.

Plaintiff contends that removal is improper here because Defendant is a forum defendant who removed the case in violation of the Forum Defendant Rule. As a preliminary matter, it is unclear whether to construe this as a jurisdictional or procedural challenge to removal because neither the Fourth Circuit nor the United States Supreme Court has provided binding precedent on whether the Forum Defendant Rule is jurisdictional or procedural in nature. However, 10 of the federal circuit courts have classified the Forum Defendant Rule as procedural. *See Holbein v. TAW Enterprises, Inc*., 983 F.3d 1049, 1053 (8th Cir. 2020) (collecting cases). The parties' briefs do not engage in significant debate on this issue, although they do refer to it at points.[7]

Upon consulting the persuasive authority of the circuit court opinions, the Court finds that the Forum Defendant Rule should be classified as procedural. The Eighth Circuit has offered a particularly helpful analysis of the statutory language:

> Whether the forum-defendant rule is jurisdictional ultimately turns on "whether Congress mandated" it be treated as such. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). The question before us, then, is principally one of statutory interpretation. …
>
> In § 1441(a), Congress gave defendants the right to remove from state to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," "[e]xcept as otherwise expressly provided by Act of Congress." Congress provided otherwise in the forum-defendant rule by prohibiting removal of a "civil action otherwise removable solely on the basis of the jurisdiction under [§] 1332(a) ... if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." § 1441(b)(2).

---

[7] For example, Defendant argues that if the Forum Defendant Rule is procedural, then such a classification would undercut federalism concerns about a purported expansion of federal jurisdiction over cases removed by forum defendants through snap removals. Dkt. 11 at 13. This is because jurisdiction would exist through the federal diversity jurisdiction statute, which is distinct from the Forum Defendant Rule. *Id*. Meanwhile, Plaintiff's reply brief suggests that the question of whether the Forum Defendant Rule is procedural or jurisdiction is primarily about timing. Here, Plaintiff contends that this amounts to a "distinction without a difference" because Plaintiff filed her motion to remand within 30 days of removal. Dkt. 12 at 1.

Unlike other statutory provisions that unequivocally govern district-court jurisdiction, *e.g.*, 28 U.S.C. § 1331 (granting "original jurisdiction" over federal-question cases), neither § 1441(a) nor § 1441(b)(2) "speak in jurisdictional terms," suggesting Congress did not mean for them to have "jurisdictional attributes," *see Henderson*, 562 U.S. at 438 (internal quotation marks omitted). The text of the forum-defendant rule reinforces this point, as it recognizes that jurisdiction over removed cases does not come from § 1441(a) but elsewhere. *See* § 1441(b)(2) (referring to removability "on the basis of the jurisdiction under [§] 1332(a)").

Thus, § 1441(a) on its face is not a jurisdiction-granting provision, and § 1441(b)(2) on its face is not a jurisdiction-stripping provision. Instead, § 1441(a) gives certain state-court defendants access to a federal forum that already possesses subject-matter jurisdiction over the type of action being removed. The forum-defendant rule, in turn, narrows the class of defendants who are entitled to exercise this right. Simply put, the rule strips forum defendants of the statutory right to remove; it does not strip district courts of jurisdiction they otherwise have to adjudicate the sorts of actions forum defendants might attempt to remove.

*Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049, 1054 (8th Cir. 2020). This construction of the Forum Defendant Rule is convincing. Federal circuit courts have also considered the legislative history of the removal statute and purpose of the Forum Defendant Rule[8] in concluding that it is a procedural requirement for removal of diversity cases. Nevertheless, it is sufficient to stick to the plain text of the Forum Defendant Rule in classifying it as a procedural rule. *See Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001) (explaining that under the Plain Meaning Rule of statutory interpretation, "a court's analysis must end with the statute's plain language" unless ambiguity is present in the statutory text).

A motion to remand based on a procedural defect must be brought within 30 days after the defendant files the required notice of removal. 28 U.S.C. § 1447(c). Otherwise, a party who fails to object is deemed to waive a procedural defect. *See, e.g.*, *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F. 3d 192, 198 (4th Cir. 2008). ("Section 1447(c) effectively assigns *to the*

---

[8] *See, e.g.*, *Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049, 1055-57 (8th Cir. 2020); *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939-40 (9th Cir. 2006).

*parties* the responsibility of policing non-jurisdictional questions regarding the propriety of removal, permitting them to assert a procedural defect or to waive the defect if they choose to remain in the federal forum.") (italics in original); *Wendy D. Swiney, LLC v. Legacy Care, LLC*, No. 3:22-cv-624, 2022 WL 17637444, at *3 (E.D. Va. Dec. 13, 2022) ("The analysis proceeds from the premise that only a procedural, rather than jurisdictional, removal defect can be waived by a party."). Here, the Defendant filed its notice of removal on June 5, 2024, and Plaintiff timely filed her motion to remand on July 5, 2024. Thus, she did not waive her right to challenge removal based on a purported procedural defect.

This motion to remand ultimately requires the Court to resolve a pure legal question of whether the Forum Defendant Rule bars pre-service removal by a forum defendant. Jurisdiction is proper in this case pursuant to 28 U.S.C. § 1332, which grants federal courts diversity jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000. In its notice of removal, Defendant alleged that there is complete diversity in this case and that the amount in controversy requirement is satisfied. Dkt. 1 at 2-3.[9] Plaintiff has not contested this. Because the case at the time of removal would have otherwise met the requirements of 28 U.S.C. § 1332, the Court must turn its attention to interpreting the Forum Defendant Rule. In doing so, the Court is mindful that "[r]emoval statutes are strictly construed against removal and all doubts about the propriety of removal are resolved in favor of retained state court jurisdiction." *Lawhorne v. Walgreens Boots Alliance, Inc.*, No. 3:19-cv-00016, 2019 WL 3046106, at *2 (W.D. Va. July 11, 2019) (citing *Marshall v. Manville Sales Corp.* 6 F.3d 229, 232 (4th Cir. 1993)).

### III. DISCUSSION

---

[9] Plaintiff's complaint in state court sought a judgment of $3 million. Dkt. 1 at 2.

There are several common assumptions and points of agreement between the parties. The parties have complete diversity of citizenship because Plaintiff is a Tennessee citizen while Defendant is a Virginia citizen. More than $75,000 is in dispute. Plaintiff timely filed her motion to remand. Thus, the motion to remand this case – a case which is "otherwise removable solely on the basis of the jurisdiction under section 1332(a)," 28 U.S.C. § 1441(b)(2) - presents the single issue of whether the Forum Defendant Rule permits snap removal. More specifically, the central question before the Court is whether the language in 28 U.S.C. §1441(b)(2) barring removal "if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought" precludes *pre-service* snap removal by a forum defendant, like the Defendant here.

## A. Parties' arguments and conflicting interpretations of the Forum Defendant Rule

Plaintiff heavily leans on rationales grounded in purpose, federalism, and public policy to contend that Congress could not have intended for a forum state defendant to remove a diversity case prior to service. First, Plaintiff argues that snap removal is at odds with the Forum Defendant Rule's purpose of protecting out-of-state defendants against possible prejudices in state courts. Dkt. 9 at 4. Moreover, Plaintiff argues that federalism principles weigh against allowing snap removal by an in-state defendant, *id*. at 6-8, and that snap removal creates "absurd" results. *Id*. at 8-9. Finally, Plaintiff emphasizes how snap removal undermines public policy that favors communication among parties and discourages gamesmanship. *Id*. at 11-12. Plaintiff does not seriously dispute that the plain language of the Forum Defendant Rule could be read to allow for removal by an in-state defendant. Instead, Plaintiff emphasizes that literal application of the statutory language could lead to either an absurd outcome or "an outcome that

is demonstrably at odds with clearly expressed congressional intent to the contrary." *Id*. 7-8.

(citing *Hillman v. IRS*, 263 F.3d 338, 342 (4th Cir. 2001)).

Acknowledging that the Fourth Circuit has not yet weighed in on snap removal, the

Plaintiff urges the Court to adopt the reasoning of a decision from the U.S. District Court for the

Eastern District of Virginia, *Campbell v. Hampton Roads Bankshares, Inc.*, 925 F.Supp.2d. 800

(E.D. Va. 2013). In *Campbell*, a North Carolina citizen sued two Virginia citizens in a Virginia

state court over a contract dispute. *Id*. at 803. The forum defendants then removed their case to

the Eastern District before being served and the Plaintiff moved to remand. *Id*. In a key portion

of the opinion dealing with whether an unserved forum defendant may remove a case, Judge

Morgan characterized such use of snap removal as absurd:

> [P]ermitting a forum defendant to appear and seek federal jurisdiction for an action
> through removal, whilst simultaneously asserting that it cannot be barred from removing
> because it has not been properly made party to the action—through delivery of summons
> and a copy of the complaint—is patently absurd.

*Id*. at 809-10. To avoid this result, Judge Morgan explained that the word "served" in the statute

should not be construed to have its plain meaning, which is "delivery of a summons to appear

and respond in court." *Id*. at 809. Judge Morgan instead supplied an alternative meaning: "actual

notice and involvement in the case." *Id*. at 810. "Practically, this reading of the statute will

always make the citizenship of a removing defendant relevant to a determination of the propriety

of removal, regardless of whether or not the removing defendant has been technically served—

and thus prevent a forum-defendant from removing before service." *Id*. The Court concluded the

in-state defendants' removal was improper and granted the motion to remand.

Plaintiff also draws attention to a subsequent Eastern District of Virginia decision,

*Spigner v. Apple Hospitality REIT, Inc.*, No. 3:21cv758, 2022 WL 1451397 (E.D. Va. Mar. 1,

2022). There, a Florida citizen brought a personal injury action in a Virginia state court against

two Virginia citizens and one Maryland citizen. *Id*. at *1. Before service of process, the

defendants removed the case to federal court and the plaintiff moved to remand. *Id*. Judge Novak

upheld the use of snap removal and found that it was proper under the statute's plain language.

*Id*. at *5. However, the Plaintiff here makes much of how Judge Novak distinguished *Spigner*

from *Campbell* on the grounds that *Spigner* involved an out-of-state defendant while all of the

defendants in *Campbell* were forum defendants. Given that removal is "intended to protect out-

of-state defendants from possible prejudices in state court," Judge Novak concluded that, it

"would not contravene common sense" to allow removal where at least one defendant is a non-

forum defendant. *Id*. In the present case, the Plaintiff suggests *Spigner* and *Campbell* together

provide support for a rule that bars snap removal when <u>all</u> defendants are forum defendants. Dkt.

9 at 9-10.

      For its part, Defendant argues that the plain language of the Forum Defendant Rule

allows for pre-service removal by a forum defendant. Its brief emphasizes the Fourth Circuit's

directive that "unless there is some ambiguity in the language of a statute, a court's analysis must

end with the statute's plain language." Dkt. 11 at 5 (citing *Hillman v. IRS*, 263 F.3d 338, 342 (4th

Cir. 2001)). The Defendant argues that the statute is unambiguous and that exceptions to the

plain statement rule are inapplicable (i.e., snap removal is not absurd and a literal application of

the statutory language would not contravene congressional intent). *Id*. at 8-12. Defendant also

contends that because the Forum Defendant Rule is procedural and not jurisdictional in nature, it

"neither creates nor destroys jurisdiction." *Id*. at 13. Accordingly, Defendant argues that

federalism concerns are not at issue because the Forum Defendant Rule is a procedural limitation

distinct from the concept of the jurisdiction of federal courts. *Id*. To illustrate this point,

Defendant notes that if the Forum Defendant Rule is procedural, then a case removed to federal

court could remain there if the Forum Defendant Rule provides grounds for objecting to the
federal court hearing the case and the plaintiff fails to file a motion to remand within 30 days of
removal. *Id*. Casting the Forum Defendant Rule as procedural in nature (and thus waivable)
means that it does not implicate federalism concerns that are, by contrast, intertwined with
questions of subject matter jurisdiction.  Finally, Defendant argues that public policy is expressed
by Congress, which added the "properly joined and served" language to the removal statute in
1948 and has not altered this particular phrase since. *Id*. at 13-14. From this perspective, public
policy could be interpreted as allowing snap removal.

The parties clearly have conflicting interpretations of the Forum Defendant Rule. In the
absence of binding precedent from the Fourth Circuit on the validity of snap removal, the Court
consults persuasive authority from other district courts in the Fourth Circuit as well as the
appellate decisions from other circuits that have considered this question. The Fourth Circuit's
statutory interpretation principles guide this Court's analysis.


**B. Persuasive authority**

*1. Circuit court decisions*

Each of the three federal courts of appeals to consider the validity of snap removal have
upheld the practice. *See Encompass Insurance Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d
147 (3d Cir. 2018); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019); *Texas
Brine Co., LLC v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482 (5th Cir. 2020).

The *Encompass Insurance* case involved an Illinois insurance company that sued a
Pennsylvania defendant in a Pennsylvania state court. 902 F.3d at 149. Before service, the forum

defendant removed the case to federal court. *Id*. at 150. The district court denied a motion to remand and the Third Circuit later affirmed on appeal.

The Third Circuit found that the plain meaning of the Forum Defendant Rule allowed for snap removal and rejected the argument that such a result was absurd. The removal statute, the Court explained, was intended to prevent discrimination against out-of-state parties in state courts. *Id*. at 153. As for the specific language at issue in the Forum Defendant Rule – referring to "properly joined and served" defendants – the Court found its particular purpose was not obvious. "The legislative history provides no guidance; however, courts and commentators have determined that Congress enacted the rule 'to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve.'" *Id*. (quoting Arthur Hellman, et al., *Neutralizing the Stratagem of "Snap Removal": A Proposed Amendment to the Judicial Code*, 9 FED. CTS. L. REV. 103, 108 (2016)). Although the plaintiff argued that snap removal conflicted with a fraudulent-joinder rationale, the Third Circuit was unpersuaded. It explained how a rule requiring service of process as a prerequisite for the Forum Defendant Rule is compatible with a purpose of deterring fraudulent joinder:

> Congress' inclusion of the phrase "properly joined and served" addresses a specific problem — fraudulent joinder by a plaintiff — with a bright-line rule. Permitting removal on the facts of this case does not contravene the apparent purpose to prohibit that particular tactic. Our interpretation does not defy rationality or render the statute nonsensical or superfluous, because: (1) it abides by the plain meaning of the text; (2) it envisions a broader right of removal only in the narrow circumstances where a defendant is aware of an action prior to service of process with sufficient time to initiate removal; and (3) it protects the statute's goal without rendering any of the language unnecessary.

*Id*. at 153-53. The Court acknowledged that this result "may be peculiar in that it allows [the forum defendant] to use pre-service machinations to remove a case that it otherwise could not;

however, the outcome is not so outlandish as to constitute an absurd or bizarre result." *Id*. at 153-54.

Next, in 2019, the Second Circuit affirmed a district court's denial of a motion to remand. In *Gibbons v. Bristol Myers Squibb Company*, a group of consumer plaintiffs sued two pharmaceutical company defendants who were Delaware citizens in Delaware state court. Before being served, the defendants removed the case to federal court and the court denied a motion to remand. *Id*. at 704. On appeal, the Second Circuit rejected the argument that snap removal produces an absurd result at odds with the purposes of the federal removal statute. The Court adopted a rationale similar to the Third Circuit's characterization of the "properly joined and served" clause as a "bright-line rule:"

> [W]hile it might seem anomalous to permit a defendant sued in its home state to remove a diversity action, the language of the statute cannot be simply brushed aside. Allowing a defendant that has not been served to remove a lawsuit to federal court "does not contravene" Congress's intent to combat fraudulent joinder. In fact, Congress may well have adopted the "properly joined and served" requirement in an attempt to both limit gamesmanship and provide a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant. Absurdity, then, cannot justify a departure from the plain text of the statute.

*Id*. at 706 (citations omitted). The Second Circuit also rejected an argument that snap removal should be barred on the grounds that it would produce too much variation in the application of the Forum Defendant Rule. More specifically, the plaintiffs had argued that allowing forum defendants to remove a diversity case before service of process could mean that those who live in states that require a period between the filing of a compliant and service would be able to remove cases more easily to federal court than those who are sued in states without such a delay requirement. *Id*. at 706. Nevertheless, the court explained that "state-by-state variation is not

uncommon in federal litigation" and that "it does not follow from the existence of variation that we must look beyond the plain text of Section 1441(b)(2)." *Id*.

More recently, the Fifth Circuit affirmed a district court's denial of a motion to remand following a snap removal. *Texas Brine Co., LLC v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482 (5th Cir. 2020). In *Texas Brine*, a Texas plaintiff sued two forum defendants and one out-of-state defendant in Louisiana state court. *Id*. at 484. When the out-of-state defendant was served with process, it removed the case before the plaintiff served the two in-state defendants. *Id*. The district court then denied the plaintiff's motion to remand. *Id*. The Fifth Circuit found that the Forum Defendant Rule is unambiguous and that the plain meaning allowed for snap removal. *Id*. at 486. The Court also concluded that snap removal was not absurd. *Id*. It explained that snap removal could be understood as a reasonable application of the statute's text. The Court cited to the Second Circuit's *Gibbons* decision for the proposition that Congress may have included the "properly joined and served" clause in the removal statute to deter gamesmanship and offer a "bright-line rule keyed on service." *Id*. (citing *Gibbons*, 919 F.3d at 706). "The plain-language reading of the forum defendant rule as applied in this case does not justify a court's attempt to revise the statute." *Id*. at 487.[10]

While the circuit court opinions differ in their exact approaches to statutory interpretation (which is largely guided by circuit-specific case law), they reach common conclusions: the Forum Defendant Rule's plain, unambiguous language allows for snap removal and this approach to removal – peculiar it may be – is not absurd.

---

[10] The Plaintiff makes much of the fact that the Fifth Circuit's *Texas Brine* decision notes that "[o]f some importance, the removing party is not a forum defendant. Diversity jurisdiction and removal exist to protect out-of-state defendants from in-state prejudices." *Texas Brine* at 487. However, that aspect of *Texas Brine* does not appear to have been a determinative factor in the Fifth Circuit's analysis. The plain text of the statute, the high bar for finding absurdity, and possible explanations for the purpose of the "properly joined and served" language raised by the Second Circuit in *Gibbons* (a case where the removing defendants were forum defendants) seem more important to the Fifth Circuit's reasoning.

### *2. District court case law*

The constellation of district court case law has far less consensus.

As noted above, the Eastern District of Virginia has approved of snap removal in one instance but disapproved of it in another. More recently - after the parties submitted briefing on Plaintiff's motion to remand - the same court *permitted* snap removal by a forum defendant.

In *Androus v. Androus*, No. 1:24-cv-01305, 2024 WL 4008653 (E.D. Va. Aug. 30, 2024), Judge Nachmanoff found that the Forum Defendant Rule's plain text led to the conclusion that snap removal was proper. *Id*. at *5. Judge Nachmanoff rejected the type of absurdity argument often raised in challenges to snap removal. Agreeing with the Second Circuit's categorization of the "properly joined and served" clause as a "bright-line rule," he explained that "[a]s with any bright-line rule, this leads to some unusual consequences, and snap removal, one such consequence, 'may seem odd, but it is not absurd.'" *Id*. at *5 (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565 (2005)). Judge Nachmanoff was also unpersuaded by attempts to reconcile his district's *Spigner* and *Campbell* cases to bar removal when the sole defendant is a Virginia citizen:

> While *Spigner* noted that "one of the three defendants" was a "non-forum defendant" and it would "not contravene common sense" to allow that defendant to remove, 2022 WL 1451397 at *5, the rule articulated in *Campbell* would have prevented even the out-of-state defendant in *Spigner* from removing the case to federal district court because the Virginia defendants in *Spigner* had "actual notice and involvement in the case." Even more concerningly, *Campbell*'s alternative to the statute's plain meaning could *prevent* removal in circumstances where Congress obviously meant to allow it. It is hardly inconceivable that a fraudulently joined defendant might have "actual notice and involvement in the case" in the manner of the Defendants in *Campbell* or *Spigner*, which could then prevent removal where Congress intended.

*Id*. at *6.  Judge Nachmonoff accordingly denied the plaintiffs' motion to remand.

Other district courts within the Fourth Circuit have been less receptive to snap removal. The District of Maryland has notably issued several decisions "that have condemned the practice of pre-service removal as gamesmanship contrary to the purpose behind the forum defendant rule." *Nielson v. Pharmaceutics International, Inc.*, No. GLR-23-3327, 2024 WL 1466114, at *2-3 (D. Md. Apr. 4, 2024) (collecting cases). Judges in the District of South Carolina have remanded cases on the grounds that snap removal is absurd, *see Doe 305 v. Richter*, No. 2:22-cv-02940, 2023 WL 3964052, at *2-3 (D. S.C. June 12, 2023); *Turtle Factory Building Corp. v. McGrath Real Estate Holdings, LLC*, No. 2:20-cv-03099, 2021 WL 688697, at *3 (D. S.C. Jan. 28, 2021), as have those in the Southern District of West Virginia. *See Phillips Construction, LLC v. Daniels Law Firm, PLLC*, 93 F.Supp. 544, 553-56 (S.D. W.Va. 2015); *Active Resources, Inc. v. Hagewood,* No. 2:22-cv-00172, 2022 WL 2346398, at *4 (S.D. W.Va. June 29, 2022). *But see Blakenship v. Napolitano*, No. 2:19-cv-00236, 2019 WL 3226909, at *4 (rejecting absurdity argument and agreeing with persuasive authority from circuit courts "that Congress enacted a bright-line rule and applying it as written is not clearly contrary to its intended purpose.").

## C. Statutory interpretation principles

This Court must adhere to the "Plain Meaning Rule" when interpreting statutes. As the Fourth Circuit has defined it, "[t]he general rule is that unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." *Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001) (citing *Caminetti v. United States,* 242 U.S. 470, 485 (1917) and *United States v. Morison,* 844 F.2d 1057, 1064 (4th Cir. 1988)). To determine if ambiguity is present, a court considers "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Ignacio v. U.S.*, 674 F.3d

252, 254 (4th Cir. 2012) (quoting *United States v. Thompson–Riviere,* 561 F.3d 345, 354–55 (4th Cir.2009)).

The Plain Meaning Rule has what the Fourth Circuit describes as "two extremely narrow exceptions." *Hillman*, 263 F.3d at 342. First, "when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary." *Id*. Second, "when literal application of the statutory language at issue 'results in an outcome that can truly be characterized as absurd, *i.e.,* that is so gross as to shock the general moral or common sense....'" *Id*. (quoting *Sigmon Coal Co. v. Apfel,* 226 F.3d 291, 304 (4th Cir. 2000)). This is a high bar to clear because "if it is plausible that Congress intended the result compelled by the Plain Meaning Rule, [a court] must reject an assertion that such an application is absurd." *In re Sunterra Corp*., 361 F.3d 257, 268 (4th Cir. 2004) (citing *Sigmon Coal*, 226 F.3d at 308). When either of these "exceptionally rare" exceptions to the Plain Meaning Rule are in play, a court can then "look beyond an unambiguous statute and consult legislative history to divine its meaning." *Hillman*, 263 F.3d at 342 (quoting *Sigmon Coal*, 226 F.3d at 304).

## D. Analysis

### 1. The plain, unambiguous language of 28 U.S.C. § 1441(b) permits snap removal

The Court starts, as it must, by reviewing the text of the statutory provision. Here, the language is clear. The Forum Defendant Rule applies when two conditions are present in a case that otherwise meets the requirements of diversity jurisdiction: a forum defendant has been properly joined to an action *and* the defendant has been served. By its terms, the statute leaves open the possibility that an in-state defendant who would be a proper party to a case can remove it to federal court so long as the defendant does so prior to service. Even Judge Morgan, who

19

rejected the use of snap removal, conceded this point about the statute's plain meaning. He

offered the following analysis in the *Campbell* decision:

> Here, the literal meanings of "serve" include: (1) "To make legal delivery of (a notice or
> process)" or (2) "To present (a person) with a notice or process as required by law."
> Black's Law Dictionary 1491 (9th ed. 2009). Process is a "summons ... to appear or
> respond in court." *Id.* at 1325. Accordingly, pertaining to a defendant and regarding the
> initiation of a lawsuit, the delivery of a summons to appear and respond in court is the
> literal, plain meaning of the term "served" in the "properly joined and served" language
> of § 1441(b)(2). *See* Fed.R.Civ.P. 4(c). The question, then, is whether the result of the
> statute's plain meaning—**permitting removal so long as forum-defendants remove**
> **before a plaintiff can serve them**—is so absurd a disposition that no reasonable person
> could intend, that is "so gross as to shock the general [ ] common sense."

*Campbell v. Hampton Roads Bankshares, Inc.*, 925 F.Supp.2d. 800, 809 (E.D. Va. 2013) (citing

*Hillman*, 263 F.3d at 342 and *Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 527 (1989))

(emphasis added). As discussed below, this Court reaches a different conclusion than Judge

Morgan about the absurdity of snap removal. But, at the outset, the Court agrees with Judge

Morgan as to the statute's plain meaning.

Because the Forum Defendant Rule lacks ambiguity with regard to pre-service removal

by forum defendants, the Plain Meaning Rule applies. Accordingly, the Court's analysis should

ordinarily "end with the statute's plain language." *Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir.

2001). Plaintiff, however, urges the Court to invoke exceptions to the Plain Meaning Rule.


*2. Snap removal is not "demonstrably at odds with clearly expressed congressional intent"*

First, a court may depart from a statute's plain language when its "literal application"

would be "demonstrably at odds with clearly expressed congressional intent to the contrary."

*Hillman* 262 F.3d at 342. Plaintiff points to the legislative intent behind diversity jurisdiction – to

protect out-of-state defendants from potential prejudice in state courts[11] – and suggests that the

---

[11] Dkt. 9 at 4 (citing *Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 54 (1954) (Frankfurter, J., concurring)).

Forum Defendant Rule is consistent with this purpose because it limits the ability of in-state defendants to remove cases to federal court "as there is no risk of a Defendant being treated unfairly due to their foreign status." Dkt. 9 at 4. Plaintiff argues that allowing a forum defendant to take advantage of removal despite there being little risk of prejudice in the defendant's "home" state court puts snap removal in conflict with the intent of diversity jurisdiction. Dkt. 9 at 3-4, 6, 10-11. Moreover, Plaintiff asks the Court to find that the Forum Defendant Rule's reference to "served" defendants should mean "provided with notice of involvement in the case" to prevent forum defendants from removing cases from state courts while still barring plaintiffs from joining parties against whom they do not intend to proceed. Dkt. 9 at 11. The Court finds these arguments unpersuasive.

As the Third Circuit has explained, while it may be true that the removal statute "exists, in part, to prevent favoritism for in-state litigants," the specific legislative intent behind the "properly joined and served" language in Section 1441(b) "is less obvious." *Encompass Insurance Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 153 (3d Cir. 2018). Indeed, "[t]he legislative history provides no guidance." *Id*. The Third Circuit noted that the consensus in case law and commentary is that the Forum Defendant Rule is intended to prevent fraudulent joinder. *Id*. ("Congress enacted the rule "to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve." (quoting Arthur Hellman, et al., *Neutralizing the Stratagem of "Snap Removal": A Proposed Amendment to the Judicial Code*, 9 FED. CTS. L. REV. 103, 108 (2016))). The court held that Congress addressed fraudulent joinder with a "bright-line rule" when it adopted the "properly joined and served" language. *Id*. Allowing snap removal "does not contravene the apparent purpose" of prohibiting plaintiffs from engaging in fraudulent joinder. *Id*.

21

The Second Circuit adopted a similar rationale and made the following observations:

> while it might seem anomalous to permit a defendant sued in its home state to remove a diversity action, the language of the statute cannot be simply brushed aside. Allowing a defendant that has not been served to remove a lawsuit to federal court "does not contravene" Congress's intent to combat fraudulent joinder. In fact, **Congress may well have adopted the "properly joined and served" requirement in an attempt to both limit gamesmanship and provide a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant**.

*Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 706 (2d Cir. 2019) (emphasis added). This account of a "bright-line rule" is a persuasive explanation for why Congress may have included the "properly joined and served" requirement.

To address Plaintiff's arguments about snap removal conflicting with legislative intent, the Court finds it sufficient to note that there is no "clearly expressed congressional intent" of the "properly joined and served" language in the Forum Defendant Rule. As best as this Court can tell, this provision was adopted to deter fraudulent joinder litigation tactics. *See Encompass* 902 F.3d at 153; *Gibbons*, 919 F.3d at 706. Because the "literal application" of the statute – snap removal by a forum defendant – conflicts with neither the purpose of deterring fraudulent joinder by plaintiffs, nor any "clearly expressed congressional intent to the contrary," *Hillman* 262 F.3d at 342, this exception to the Plain Meaning Rule is inapplicable.

### 3. Snap removal is not absurd

A court may also go beyond the plain meaning of a statute "when literal application of the statutory language at issue 'results in an outcome that can truly be characterized as absurd, *i.e.,* that is so gross as to shock the general moral or common sense....'" *Hillman* 262 F.3d at 342 (quoting *Sigmon Coal Co. v. Apfel,* 226 F.3d 291, 304 (4th Cir. 2000)).

Plaintiff argues snap removal produces a number of absurdities. She argues it is "patently absurd" to allow a forum defendant to appear before a court to obtain federal jurisdiction while arguing that they cannot be prevented from removing the case from state court because they were not properly made a party to the case through service of process. Dkt. 9 at 8 (citing *Campbell v. Hampton Roads Bankshares, Inc.*, 925 F.Supp.2d. 800, 809 (E.D. Va. 2013)). She also argues that allowing a defendant to defeat a plaintiff's choice of venue via snap removal is absurd: "[i]t would be absurd to find that a defendant could overcome the plaintiff's choice of venue not because the venue was improper or unfair, but because the defendants knew a complaint had been filed against them before a process server could deliver it to them." Dkt. 9 at 9. To avoid the alleged absurdities, the Plaintiff invites the Court to follow Judge Morgan's reasoning in *Campbell* and hold that the word "served" in 28 U.S.C. 1441(b) means "actual notice of involvement in the case, rather than served with process." Dkt. 9 at 8-10; Dkt. 12 at 2-5. Because the Defendant had "actual notice" of the suit when it received a courtesy copy of Plaintiff's complaint, this construction would have the effect of barring removal.

Defendant contends that "absurdity that justifies deviating from the plain meaning rule is exceedingly rare" and cannot be found here. Dkt. 11 at 9. Regarding the alleged absurdity of a defendant both seeking federal jurisdiction and claiming they were not made a party to the case through service of process, Defendant acknowledges that "[s]ervice of a summons and complaint is one way that a court may obtain personal jurisdiction over a defendant" but points out that "[a]nother way a court may obtain personal jurisdiction over a defendant is by the defendant – without ever being served – filing pleadings and making a general appearance." *Id*. at 11. Defendant also argues that the alleged absurdity about a defendant trumping a plaintiff's choice of venue does not rise to the level of an absurdity that merits departing from the statute's plain

meaning because "[a] plaintiff's choice of venue – even if it is a proper venue – is not absolute."
*Id*. at 10. Defendant points to 28 U.S.C. § 1404(a) for an example of judicial power to transfer a
case to a different venue, even over a plaintiff's objections. *Id*.

"Absurdity" is a difficult threshold to meet. The Fourth Circuit has noted that "if it is
plausible that Congress intended the result compelled by the Plain Meaning Rule, [a court] must
reject an assertion that such an application is absurd." *In re Sunterra Corp*., 361 F.3d 257, 268
(4th Cir. 2004) (citing *Sigmon Coal*, 226 F.3d at 308). As noted earlier, the Second and Third
Circuits have provided an entirely plausible explanation for the "properly joined and served"
language in the Forum Defendant Rule. That is, Congress may have intended for this provision
to serve as "a bright-line rule keyed on service, which is clearly more easily administered than a
fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state
defendant." *Gibbons v. Bristol-Myers Squibb Co*., 919 F.3d 699, 706 (2d Cir. 2019). Because it is
plausible that Congress, by creating a bright-line rule, intended for the Forum Defendant Rule to
apply when a defendant is properly joined *and* served, it allowed for the possibility of situations
where the rule does *not* apply because the conditions are not met. "As with any bright-line rule,
this leads to some unusual consequences, and snap removal, one such consequence, 'may seem
odd, but it is not absurd.'" *Androus v. Androus*, 1:24-cv-01305, 2024 WL 4008653, at *5 (E.D.
Va. Aug. 30, 2024) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565
(2005)). Moreover, "[t]he fact that a clear rule such as the one Congress drafted is susceptible to
gamesmanship under certain circumstances is not 'so gross as to shock the general moral or
common sense.'" *Id*. (quoting *Hillman*, 253 F.3d at 342). To be sure, snap removal is an
unexpected outcome of the Forum Defendant Rule's plain text. But it does not rise to the level of
absurdity that would allow this Court to inscribe its own preferred meaning onto the statute.

Because Plaintiff has failed to show that snap removal produces an absurd result, the Court declines to follow *Campbell* and will not define "served" to refer to actual notice.

### *4. Plaintiff's other arguments regarding federalism and public policy*

Because the relevant statutory language plainly allows for snap removal and that the two rare exceptions to the Plain Meaning Rule do not apply, the analysis above should be sufficient to deny Plaintiff's motion to remand. Nevertheless, the plaintiff raises additional arguments that the Court will address for the sake of providing a thorough explanation of its decision.

First, Plaintiff contends that federalism principles should deter the Court from recognizing snap removal. Dkt. 9 at 5-7. Plaintiff argues that the Forum Defendant Rule is a limitation on federal diversity jurisdiction and that allowing for snap removal "would constitute an expansion of federal jurisdiction." *Id.* at 6. Because state courts traditionally hear tort cases based on state law, Plaintiff argues this purported expansion of federal jurisdiction – by which forum defendants could remove cases to federal court – would need to be supported by a "clear statement" from Congress allowing for this intrusion into state sovereignty. *Id.* (citing *Bond v. United States*, 572 U.S. 844, 858 (2014)). Defendant responds by arguing that the Forum Defendant Rule is a "procedural limitation" and that the relevant grant of jurisdiction is in the diversity jurisdiction statute, 28 U.S.C. § 1332. Dkt. 11 at 13. Accordingly, Defendant suggests that the Forum Defendant Rule "neither creates nor destroys jurisdiction" and that "no interpretation of the forum defendant rule – plain language or otherwise – increases the Court's jurisdiction." *Id.* "[B]ecause the court's jurisdiction exists independently of the forum defendant rule," Defendant argues, "[f]ederalism concerns are not implicated here." *Id.*

As explained in Part II's discussion of relevant legal standards, the Forum Defendant Rule is procedural in nature. Therefore, federalism concerns are rather diluted because the rule does not affect the full scope of diversity jurisdiction granted to federal courts under 28 U.S.C. § 1332. As the Eighth Circuit put it, "[t]he rule strips forum defendants of the statutory right to remove; it does not strip district courts of jurisdiction they otherwise have to adjudicate the sorts of actions forum defendants might attempt to remove." *Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049, 1054 (8th Cir. 2020). That said, the Court understands that "[r]emoval statutes are strictly construed against removal and all doubts about the propriety of removal are resolved in favor of retained state court jurisdiction." *Lawhorne v. Walgreens Boots Alliance, Inc.*, No. 3:19-cv-00016, 2019 WL 3046106, at *2 (W.D. Va. July 11, 2019) (citing *Marshall v. Manville Sales Corp.* 6 F.3d 229, 232 (4th Cir. 1993)). Even when strictly construed, the statutory language in 28 U.S.C. § 1441(b)(2) plainly allows for pre-service removal by a forum defendant in a case that would otherwise meet the requirements of diversity jurisdiction. Because the language is so clear and the exceptions to the Plain Meaning Rule that might lead this Court to depart from a literal reading of the statutory text do not apply, there is no reason to doubt the propriety of snap removal. Thus, snap removal is permissible under these circumstances. In sum, principles of federalism and rules governing the strict construction of removal statutes do not present an insurmountable barrier to Defendant's use of snap removal.

Plaintiff also raises a number of public policy concerns that weigh against reading the statute to allow for snap removal. Plaintiff fears that allowing snap removal by forum defendants "would discourage the cooperative use of procedure" and promote "gamesmanship and subterfuge." Dkt. 9 at 12. Plaintiff points to Defendant's actions here as an example of the unsavory conduct that snap removal enables. Here, she contends that Defendant took advantage

of her willingness to provide its insurer with a courtesy copy of her state court complaint in order to circumvent the Forum Defendant Rule and remove the case prior to service of process. Dkt. 8 at 2. Moreover, Plaintiff argues that "[t]o deny this Motion would encourage future litigants to file their Complaints secretly, and serve them without any communication with any other representative associated with future defendants and would encourage forum defendants to attempt to dodge or otherwise delay service." Dkt. 9 at 12.  Defendant agrees that public policy favors open communication between parties and cost effective litigation, but argues "it is no reason to deviate from the plain meaning of a statute." Dkt. 11 at 13. Moreover, Defendant contends that Congress set public policy when it enacted the "properly joined and served" language in 1948 and has not seen it necessary to amend the language since then. *Id*. at 13-14.

Plaintiff voices legitimate concerns about the potential weaponization of snap removal. But Congress – not this Court – is best equipped to alter the removal statute and address these critiques of snap removal, which is plainly allowed by the express statutory text. *See Encompass Insurance Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 154 (3d Cir. 2018) ("Reasonable minds might conclude that the procedural result demonstrates a need for a change in the law; however, if such change is required, it is Congress — not the Judiciary — that must act."); *Bostock v. Clayton County*, 590 U.S. 644, 681 (2020) ("When it comes to statutory interpretation, our role is limited to applying the law's demands as faithfully as we can in the cases that come before us. As judges we possess no special expertise or authority to declare for ourselves what a self-governing people should consider just or wise."). Accordingly, this Court declines Plaintiff's invitation to cast aside the Forum Defendant Rule's unambiguous language on public policy grounds.

<u>C<small>ONCLUSION</small></u>

Plaintiff's motion to remand, Dkt. 8, raises a significant question of statutory interpretation regarding the Forum Defendant Rule. Because the relevant statutory language is unambiguous and expressly allows for pre-service "snap removal" by a forum defendant, the Court finds that Defendant's removal was permissible. This result is neither absurd nor in conflict with clearly expressed congressional intent. Accordingly, Plaintiff's motion is **DENIED**.

An appropriate Order will accompany this Memorandum Opinion.

Entered this  8th  day of November, 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE